**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS L. PARKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:10-CV-02383-JCH-NAB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael Astrue ("Defendant") denying the application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 435, filed by Dennis

L. Parker ("Plaintiff").  Plaintiff filed a Brief in Support of the Complaint.  [Doc. 14].  Defendant

filed a Brief in Support of the Answer.  [Doc.15].  Plaintiff filed a Reply.  [Doc. 16].  This matter

was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1).

[Doc. 10].

**I.**
**PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on

January 21, 2009.  His claim was denied at the initial determination level and Plaintiff filed a timely

request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 83-88).  The ALJ held a

hearing and denied the claim in a written decision dated May 3, 2010.  (Tr. 27-71); (Tr. 8-22).  The

Appeals Council denied Plaintiff's request for review.  (Tr. 1-3).  As such, the decision of the ALJ

stands as the final decision of the Commissioner.

## II.
## EVIDENCE BEFORE THE ALJ

### A. Testimony at the Hearing

#### 1. Plaintiff's Testimony

Plaintiff's administrative hearing was held on February 18, 2010. Plaintiff was present and represented by counsel. Plaintiff testified, as well as a vocational expert, Mr. Vincent Stock ("VE").

Plaintiff testified that he was fifty-two years old and had received his high school diploma, but no college or vocational training. (Tr. 31-33). He stated that he served in the Air Force for three months before he was medically discharged due to a leg injury from a prior motorcycle accident. (Tr. 33). Plaintiff said he is divorced, although he lives with his ex-wife and son. (Tr. 31-32). Plaintiff testified he last worked in 2008 as a self-employed "handyman," doing "odd jobs" and small repairs on cars for friends. (Tr. 35). He stated he had to end his previous appliance repair job in 2006 because he could not do the required heavy lifting of 50 pounds and over. (Tr. 36).

Plaintiff testified he has had emphysema for fifteen years, which causes him to get easily winded and sometimes pass out during regular activity. (Tr. 42-43). He stated he may feel out of breath by walking to the kitchen and back. (Tr. 43). Plaintiff testified he was prescribed oxygen that he uses ten to fifteen times a day and while sleeping. (Tr. 45). He also testified that he has two types of anemia and reduced kidney function as side effects of his emphysema. (Tr. 46). He stated he also uses inhalers every two hours. (Tr. 61). He said that heat, humidity, and cold weather exacerbate his shortness of breath, as well as do fumes from cleaners, heavy perfumes, and ammonia-based products. (Tr. 46). Plaintiff stated his shortness of breath leads to fatigue and has caused him to have "no endurance whatsoever," leading him to give up hunting, fishing, and

extended yard work. (Tr. 47). He said he can only walk about 50 yards at a slow pace before catching his breath and "panting like a dog." (Tr. 63-64). Plaintiff testified he has lost strength so can only lift about ten pounds, and struggles to open bottles or jars. (Tr. 64).

Plaintiff testified that, in addition to his emphysema, that he has constant pain in his right knee and occasional pain in both hips as a result of his motorcycle accident in the 1970's. (Tr. 51). He stated he no longer takes "hardcore painkillers," but instead takes aspirin and tries to avoid doing activities that would irritate his injuries. (Tr. 52). He described the pain level in his knee and hips to be a "5 or 6" on a scale from one to ten. (Tr. 53). Plaintiff said he can only sit or stand in one place for about two minutes before "everything just starts getting sore and locking up." (Tr. 63). Plaintiff testified that his weight fluctuates from nausea-induced lack of appetite. (Tr. 41-42). He also stated he has "heart issues with chest pains," but he described the issue as "mild." (Tr. 53-54).

With regard to his mental health, Plaintiff testified he was diagnosed with depression, post-traumatic stress syndrome, sociopathic tendencies, and suicidal thoughts. (Tr. 54-55). He stated his depression keeps him from feeling "like doing anything." (Tr. 55). Plaintiff said he has tried to carry out suicide "on several occasions," and asked his friends to remove his guns from his house to prevent suicide. (Tr. 55- 56). He stated he began treatment a year ago, including monthly sessions with a doctor, home counseling sessions with a social worker, and "four or five different medicines." (Tr. 57). Plaintiff testified he often forgets regular grooming activities because he "just [doesn't] think about it," and others often remind him to bathe. (Tr. 62). Plaintiff described difficulty concentrating while driving, and nervousness that he may hit someone while driving. (Tr. 62-63). Plaintiff testified his daily activities are watching television, playing solitaire, and sleeping "a lot." (Tr. 58-59).

## 2. Testimony of Vocational Expert Vincent Stock

The VE testified that Plaintiff's past work as an appliance repairman was classified by the Dictionary of Occupational Titles ("DOT") as a light job and his jobs as an auto mechanic and laborer

as medium jobs. (Tr. 65-66). The VE acknowledged that Plaintiff previously stated that his work as an appliance repairman was worked at a medium level and that he worked the laborer position at the light level. *Id.*

The ALJ asked the VE if an individual of claimant's age, education, and work experience could perform Plaintiff's past relevant work with the following limitations: (1) work limited to the light exertional category only; (2) no ability to climb ladders, ropes or scaffolds; (3) ability to occasionally climb ramps or stairs, (4) portable oxygen tank with individual at all times; (5) need to avoid concentrated exposure to extreme cold, extreme heat and humidity; (6) need to avoid concentrated exposure to irritants such as fumes, odors, dust, gasses and being in poorly ventilated areas; (7) need to avoid all exposure to operational control of moving machinery, hazardous machinery, and working at unprotected heights; (8) work limited to simple, routine and repetitive tasks; and (9) occasional interaction with the public during the performance of these work duties. (Tr. 66).

In response to the ALJ, the VE testified that an individual would not be able to perform Plaintiff's past relevant work positions as they are ordinarily performed in the national economy with the above described restrictions. (Tr. 66). The ALJ then asked if there were other jobs that an individual could have with those restrictions. *Id.* The VE responded that an unskilled light level job as a masker, semiconductor would be available with 3,000 jobs in Missouri and 120,000 jobs in the national economy. (Tr. 67). The VE noted that it would be a "limited market" with the limitations regarding no concentrated exposure to irritants, heat, and cold. (Tr. 67). The ALJ then asked the VE if his answer would change if the restrictions prohibited even a moderate exposure to irritants. *Id.* The VE answered that the masker, semiconductor position would not be available to an individual restricted from a moderate exposure to irritants, because the individual would be exposed to some

chemicals in the position.  (Tr. 67).   Therefore, the VE testified that no jobs would be available for that individual. *Id.*

## B. Medical Records

From September 11, 2005 to October 9, 2007, Plaintiff periodically sought treatment from the Behavioral Health Division at Winter Haven Hospital.  (Tr. 368-370).  Doctors at Winter Haven prescribed Plaintiff various psychotropic medications for depression and schizoid personality disorder during this time period.  *Id.*

On September 7, 2006, Plaintiff visited Mid Florida Medical Services for a psychosocial evaluation seeking medication for depression.  (Tr. 353).  Plaintiff told doctors he had a long history of traumatic events, including serving two years in Special Forces in the United States military.  *Id.* Plaintiff was diagnosed with Major Depressive Disorder and Posttraumatic Stress Disorder and was referred for a psychiatric evaluation.  (Tr. 358-59).

On January 23, 2008, Plaintiff visited the Medical Clinic of Owensville stating he was new to the area and needed refills on anti-depressants.  (Tr. 247).  Plaintiff stated that he had a lifetime of emotional problems, that he had tried many different medications, and that Prozac was the only one that worked.  *Id.*  Plaintiff said he had stopped taking Prozac six weeks prior to see how he did, and was complaining of irritability, low energy, and sleeping a lot.  *Id.*  The doctor noted that Plaintiff was alert, talkative, smiled, and had pretty good affect, however, he also noted a congested cough.  *Id.*  The doctor prescribed Prozac and medication for bronchitis.  *Id.*

On April 29, 2008, Plaintiff visited the Medical Clinic of Owensville complaining of right ear pain for one week.  (Tr. 246).  Doctors noted a swollen ear canal and yellow pus in his right ear. *Id.*  Plaintiff was treated for the ear pain.  *Id.*

On November 10, 2008, Plaintiff visited the Medical Clinic of Owensville stating he had fallen off a ladder three days prior and hit his head on concrete. (Tr. 245). He did not seek medical attention at the time of the fall, but later complained of headache, dizziness, nausea, vomiting, and blurred vision in his right eye. *Id.* Plaintiff said he had trouble standing and that he fell over in his kitchen. *Id.* Doctors ordered a CT scan, which came back normal, and Plaintiff was treated for a concussion and prescribed medicine for pain. (Tr. 248).

On April 3, 2009, Plaintiff underwent a disability determination examination at the Bond Clinic with Dr. Kevin W. Brewer ("Dr. Brewer"). (Tr. 262-266). Plaintiff had two main complaints: shortness of breath and pain in nearly all of his joints. (Tr. 262). Plaintiff complained of having daily attacks of shortness of breath for ten years, and claimed to have asthma. *Id.* He stated the shortness of breath occurs at rest or with any exertion. *Id.* Plaintiff also said he takes no medication or treatment for his breathing and smokes cigarettes. *Id.*

Dr. Brewer stated Plaintiff can sit without problems, and stand for twenty minutes before Plaintiff complained of shortness of breath. *Id.* Plaintiff also stated he cannot walk any distance at all without getting short of breath. *Id.* Dr. Brewer observed that Plaintiff was able to walk at a rapid pace swinging his arms and did not appear particularly short of breath afterward. *Id.* Dr. Brewer recorded Plaintiff's oxygen saturation at 98 percent after briskly walking for 75 or 80 yards. *Id.* Dr. Brewer stated Plaintiff's musculoskeletal range of motion is "active," and that Plaintiff has a normal gait. (Tr. 262, 264). Plaintiff stopped his range of motion complaining of joint pain, however Dr. Brewer stated such pain should have caused some gait limitation that Dr. Brewer did not observe. (Tr. 264).

Generally, Plaintiff also complained of fatigue, poor appetite, poor energy, difficulty sleeping, and past diagnoses of depression, anxiety, and chronic obstructive pulmonary disease ("COPD"). (Tr. 263). Plaintiff relayed an inconsistent history of allergies, hearing loss, and vision problems. *Id.* From a physical examination, Dr. Brewer found Plaintiff to be well nourished, alert, oriented, pleasant and conversant. (Tr. 264). Dr. Brewer stated Plaintiff's respiratory effort and heart rate were both normal. *Id.* Dr. Brewer's overall diagnoses were tobacco use syndrome; COPD; history of depression; and generalized osteoarthritis, fairly non specific. (Tr. 265).

On April 6, 2009, Plaintiff underwent a psychological evaluation with Dr. Paul W. Rexroat. (Tr. 269-272). Plaintiff claimed he could not "stand to be around people" and claimed to be depressed. *Id.* Dr. Rexroat noted Plaintiff had a normal energy level and seemed alert, and did not seem anxious or tense. (Tr. 270). Dr. Rexroat found that Plaintiff is able to understand and remember simple instructions, has adequate social skills, and only moderate limitations in ability to interact socially. (Tr. 271). Dr. Rexroat diagnosed Plaintiff with moderate and recurrent major depression. (Tr. 272).

On May 28, 2009, Plaintiff visited the Medical Clinic of Owensville complaining of insomnia and seeking a prescription for Xanax in order to sleep. (Tr. 296). The doctor referred him to Pathways, a mental health facility. *Id.* The doctor also prescribed Xanax. *Id.*

On June 29, 2009, Plaintiff visited Pathways Community Behavioral Healthcare seeking help with depression, anger, and social anxiety. (Tr. 297-307). Susan Jenner, MA., LPC diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia. (Tr. 308). On July 9, 2009, Plaintiff was evaluated at Pathways by psychiatrist, Dr.

Bhaskar Gowda. (Tr. 310-213). Dr. Gowda prescribed Seroquel, Celexa, and Wellbutrin for Plaintiff on September 3, 2009. (Tr. 314).

On November 19, 2009, Plaintiff was reevaluated at Pathways by Dr. Gowda. (Tr. 332-336). Dr. Gowda noted moderate limitations on Plaintiff's ability to maintain personal appearance, understand and remember detailed instructions, ability to maintain attention and concentration, and ability to complete a normal workday without an unreasonable number of interruptions or rest periods. (Tr. 332, 334). Dr. Gowda found only slight or no limitations on Plaintiff's ability to function socially. (Tr. 333). Dr. Gowda estimated Plaintiff's ability to adjust to a job was "fair." (Tr. 335).

On December 29, 2009, Plaintiff visited the Medical Clinic of Owensville complaining of a fast heart rate and shortness of breath upon exertion to the point where he fainted two days prior. (Tr. 349). Doctors referred him to a cardiologist. *Id.*

On January 20, 2010, Plaintiff visited the Medical Clinic of Owensville complaining of blackouts caused by shortness of breath. (Tr. 350). Plaintiff claimed to black out four to five times a week, and fell out of a tree onto barbed wire two days prior. *Id.* Doctors prescribed him an inhaler. *Id.*

On January 25, 2010, Plaintiff visited the Medical Clinic of Owensville stating he had been falling down due to shortness of breath and had been crawling on the floor to get around. (Tr. 351). Doctors treated Plaintiff with oxygen and referred him to AeroCare to get set up with oxygen treatments. *Id.*

# III.
# ALJ DECISION

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2012 and that Plaintiff has not engaged in substantial gainful activity since December 1, 2007. (Tr. 10). The ALJ found that Plaintiff has the severe impairments of major depressive disorder, generalized anxiety disorder, and chronic obstructive pulmonary disease ("COPD"). *Id.* The ALJ determined that Plaintiff's alleged aortic regurgitation and post-traumatic stress disorder were non-severe impairments. *Id.* The ALJ found that Plaintiff had no medically determined impairments related to his leg and hip. *Id.* Further, none of Plaintiff's impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ determined that Plaintiff has the RFC to perform light work except that he cannot climb ladders, ropes, or scaffolds; he is to avoid concentrated exposure to extreme cold and heat, wetness, irritants, chemicals, fumes, dust, and all operational control of machinery, working at unprotected heights, and use of hazardous machinery; he requires the ability to work with portable oxygen in jobs that only involve simple, routine, and repetitive tasks with only occasional interaction with the public. (Tr. 15). Plaintiff is unable to perform his past relevant work. (Tr. 20). The ALJ concluded, however, that Plaintiff could perform the job of masker, which exists in significant numbers in the national economy that Plaintiff can perform. (Tr. 21).

# IV.
# LEGAL STANDARDS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). The burden of persuasion to prove disability remains with the claimant throughout the evaluation process. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citation omitted); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

In this sequential analysis, first, the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id*. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.[1] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson*, 363 F.3d at 737. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

---

[1] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled.

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The factual findings of

the ALJ are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

# V.

## DISCUSSION

Plaintiff raises four points of error in arguing that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues that the ALJ erred as a matter of law in determining that there is other work in the national economy that Plaintiff can perform. Second, Plaintiff contends that the ALJ committed reversible error by giving a consulting psychologist's opinion substantial weight. Third, Plaintiff argues that the ALJ erred by excluding a medically determinable impairment. Fourth, Plaintiff argues that the ALJ committed reversible error by not considering lay evidence. The undersigned will address the points of error in the order presented.

### A. Other Work In the National Economy

The ALJ concluded that Plaintiff was not disabled because work existed in significant numbers in the national economy that Plaintiff can perform. Plaintiff argues that the ALJ erred in making this finding because the ALJ identified only one job that is limited given Plaintiff's restrictions.

The only evidence in the record regarding the number of jobs available in the national economy that Plaintiff can perform is testimony from the VE. The ALJ posed the following hypothetical to the VE:

> Assume for me, if you will, an individual of the claimant's age, education and work experience who is limited to work within the light exertional category only, who is unable to climb ladders, ropes or scaffolds, can occasionally climb ramps or stairs, at all times must have a portable oxygen tank with him. This individual is to avoid concentrated exposure to extreme cold, extreme heat and humidity. This individual is to avoid concentrated exposure to irritants such as fumes, odors, dust, gasses and being in poorly ventilated areas. Further, this individual is to avoid all exposure to operational control of moving machinery, hazardous machinery, and working at unprotected heights. Further, this individual is limited to jobs that are simple, routine

and repetitive tasks that are involved. This individual is to have only occasional interaction with the public during the performing of these work duties.

The VE testified that, given these limitations, an individual could not perform Plaintiff's past relevant work. After this response, the following exchange occurred:

ALJ: Would there be other jobs that such an individual could perform in the national or local economy?

VE: The occasional contact with the public you said?

ALJ: Occasional, sir, yes.

VE: I have a masker, semiconductor job at 726.687-034. This is an unskilled job at the light level and I have 3,000 jobs in the State of Missouri and 120,000 in the national economy. It's a limited market, your Honor --

ALJ: Is it?

VE: -- with the irritants and cold and heat.

ALJ: That's the only one you could come up with then, sir?

VE: Yes.

(Tr. 66-67).

After it has been determined that a claimant cannot perform his past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy, consistent with the claimant's vocational factors–age, education, and work experience. *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000); *see also Peak v. Astrue*, No. 4:09CV01598AGF, 2011 WL 1226959 at *7 (E.D. Mo. 2011). Courts "ultimately leave to the [ALJ's] common sense the application of the significant numbers requirement to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997) (citations omitted). "Factors the trial judge should consider include the level of the claimant's disability, the reliability of both the claimant's and the VE's testimony, and the type and availability of work that the claimant could perform. *Id*.

Here, the ALJ incorporated all of the restrictions in the above-quoted hypothetical into his RFC determination. The ALJ then, relying on the VE's testimony, concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. *See* (Tr. 21). However, the VE's testimony, while clear on the number of masker, semiconductor positions that are generally available, is unclear as to the number of those jobs that are available for an individual of Plaintiff's age, education, work experience and RFC. The VE specifically stated that Plaintiff's restrictions related to irritants and cold and heat "limited" the market of jobs available to Plaintiff. The VE did not elaborate on what he meant by the market being limited and the ALJ made no attempt to clarify the VE's response. Therefore, it is not clear to the undersigned whether the VE's reference to a "limited market" meant that the Plaintiff's restrictions related to irritants and cold and heat limited to the position of a masker, semiconductor or whether Plaintiff's restrictions further limited the number of masker, semiconductor jobs beyond the number of jobs initially indicated. Without clarification, the undersigned cannot say that the ALJ's determination that jobs that Plaintiff can perform exist in significant numbers in the local and national economy is supported by substantial evidence.

It is recommended that on remand, the ALJ obtain clarification from the VE as to exactly how many masker, semiconductor positions are available to an individual of Plaintiff's age, education, work experience and RFC. The ALJ shall then determine whether the number of jobs available to Plaintiff constitutes a significant number.

**B. Weight Given To Consulting Psychologist's Opinion**

Plaintiff argues that the ALJ erred by giving "substantial weight" to the opinion of non-examining state agency psychologist, Aine Kresheck The undersigned disagrees.

Social Security Regulation 96-6p provides in pertinent part:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 C.F.R. 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.
>
> . . .
>
> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.
>
> . . .
>
> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180 at *2-3 (July 2, 1996).

The regulations do not specify how much weight an ALJ is to give consulting psychologist opinions. The regulations only set forth criteria that must be considered in weighing such opinions. However, the regulations do make it clear that, ordinarily, a consulting opinion is not entitled to as much weight as the opinion of a treating psychologist opinion. *See* SSR-96-6p at *3. Here, there is no indication, and Plaintiff does not suggest, that the ALJ gave more weight to Kresheck's opinion than that of a treating source; the ALJ merely found Kresheck's opinion to be consistent with other

evidence in the record and therefore granted Kresheck's findings substantial weight. This decision is line with criteria set forth in the regulations for weighing consulting psychologist opinions and the decision is supported by substantial evidence in the record.

Kresheck diagnosed Plaintiff with major depression and opined that Plaintiff is only mildly restricted in activities on daily living; has moderate difficulties in maintaining social functioning; has moderate difficulties in maintaining concentration, persistence, or pace; and had no repeated episodes of decompensation. This opinion is consistent with the opinion offered by Dr. Rexroat just three weeks earlier. Dr. Rexroat examined Plaintiff and also diagnosed Plaintiff with major depression and determined that Plaintiff had few limitations in activities of daily living, moderate limitations in social functioning, average memory functioning, and was able to sustain concentration, persistence, and pace with simple tasks.

Furthermore, Kresheck's opinion is consistent with the Mental Residual Functional Capacity Assessment completed by Dr. Gowda in November of 2009. Dr. Gowda found that Plaintiff, for the most part, had only slight limitations in activities of daily living. Dr. Gowda noted a moderate limitation with respect to Plaintiff's ability to maintain personal appearance. With respect to Plaintiff's social functioning, Dr. Gowda noted no more than slight limitations. Similarly, with respect to concentration, understanding and memory, Dr. Gowda primarily found only slight limitations. However, he did note that Plaintiff has moderate limitations in his ability to understand and carry out complex instructions and his ability to maintain attention and concentrate for extended periods. Dr. Gowda also noted a moderate limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Gowda's form stated that even with a moderate limitation, an individual could still function satisfactorily.

Although Dr. Gowda's opinion and other records from Pathways, which is where Dr. Gowda practices, were not included in the records reviewed by Kresheck, this fact does not warrant reversal, as suggested by Plaintiff. The regulations make clear that when weighing consulting opinions, the ALJ shall consider how well supported the consulting opinion is by evidence in the record, "including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency[.]" SSR 96-6p at *2. Therefore, the ALJ did not err in weighing Kresheck's opinion simply because evidence from Pathways, including Dr. Gowda's opinion, was not reviewed by Kresheck. The ALJ reviewed the evidence from Pathways, including Dr. Gowda's opinion, and determined that Kresheck's opinion was consistent with that evidence and other evidence in the record.

Plaintiff cites to no medical evidence in the record that suggests that his mental restrictions are more severe than those indicated in Kresheck's opinion, and the opinions of Dr. Gowda and Dr. Rexroat. It is important to note that the ALJ did not give controlling weight to Kresheck's opinion as evidenced by the fact that the ALJ concluded that Plaintiff also had the severe mental impairment of generalized anxiety disorder, a diagnosis which is not included in Kresheck's opinion. The ALJ determined that Kresheck's opinion was entitled to substantial weight because of its consistency with other opinions in the record. That decision is supported by substantial evidence.

## C. Medically Determinable Impairments

Plaintiff argues that the ALJ erred by not including joint pain as a medically determinable impairment. Plaintiff relies on his subjective complaints of joint pain and a diagnosis of generalized osteoarthritis in arguing that the ALJ erroneously excluded osteoarthritis as a medically determinable impairment.

As an initial matter, the undersigned notes that the ALJ referenced Dr. Brewer's diagnosis of generalized osteoarthritis, fairly nonspecific, in his discussion of the medical evidence, and also discussed evidence, or lack thereof, related to Plaintiff's alleged joint pain. Therefore, the undersigned finds that the ALJ did not ignore Dr. Brewer's diagnosis, as suggested by Plaintiff.

However, to be considered disabled under the Social Security Act, a claimant must have a severe impairment that prevents the claimant from performing their past relevant work or other substantial gainful work in the national economy. 20 C.F.R. § 404.1505. An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms[.]" *Id.* A severe impairment is defined as one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

Here, although Dr. Brewer diagnosed Plaintiff with generalized osteoarthritis, fairly nonspecific, his diagnosis appears to be based solely on Plaintiff's subjective complaints of joint pain, as Dr. Brewer examined Plaintiff on only one occasion and there is no evidence that Dr. Brewer conducted or reviewed any x-rays to support his diagnosis or that he reviewed any of Plaintiff's past medical records that would support such a diagnosis. *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 446 (8th Cir. 2004) (ALJ is justified in rejecting diagnosis from sources who conducted a single examination and whose conclusions seem to be based solely upon the claimant's subjective complaints). Also, Dr. Brewer did not suggest that the osteoarthritis or the complaints of joint pain limited Plaintiff's ability to perform basic work activities. Further, Dr. Brewer noted that Plaintiff's

complaints of joint pain should have caused some gait limitation, which Dr. Brewer did not find in his examination.

As noted by the ALJ, Plaintiff complained of only emphysema and depression during his disability report interview; he did not mention osteoarthritis or joint pain during the interview. The ALJ also noted that Plaintiff did not complain of joint pain or any musculoskeletal problems when he fell off of a ladder in 2008, or when he fell out of a tree in 2010. Plaintiff testified that the pain in his knee and hip is a result of long-term effects of leg injury that originally occurred in the 1970's and allegedly required additional surgery within the last ten years. However, Plaintiff presented no medical evidence to verify the original injury and surgery or the more recent surgery. Moreover, Plaintiff did not testify that knee and hip pain limited him in performing any work related activities. He only testified that he experienced pain in his knee and hip which he rated at "about a 5 or 6"on a ten point scale. Further, the record as a whole shows that Plaintiff did not seek treatment for osteoarthritis or for hip and knee pain. *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'"). Plaintiff's argument that he did not seek treatment because of a lack of medical insurance and an inability to afford treatment is simply without merit because Plaintiff actively sought treatment for his other conditions.

It must also be noted that no doctor other than Dr. Brewer diagnosed Plaintiff with osteoarthritis, and no doctor, including Dr. Brewer placed any limitations attributable to joint pain or osteoarthritis on Plaintiff's ability to do work related activities. Also, the ALJ found that Plaintiff's subjective complaints were not entirely credible, and Plaintiff does challenge that determination. Further, even if osteoarthritis had been included as an impairment, there is no evidence in the record to support a finding that the impairment is severe because there is no evidence in the record that

suggests osteoarthritis or joint pain significantly limits Plaintiff's ability to do basic work activities. Therefore, the undersigned finds that substantial evidence in the record as a whole supports the ALJ's decision to not include osteoarthritis as a severe impairment.

## D. Lay Witness Evidence

Plaintiff argues that the ALJ erred by not considering a third party function report submitted by his friend, Terry Hinson.

In *Robinson v. Sullivan*, the Eighth Circuit held that in circumstances where the ALJ *explicitly* rejects lay witness evidence but fails to provide an explanation for why he rejected the evidence, the failure to provide an explanation is not reversible error where the same evidence that the ALJ refers to in discrediting the claimant's claims also discredits the lay witness' claims. (emphasis added). *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). In such circumstances the Eighth Circuit has refused to remand based on an arguable deficiency in opinion-writing technique that had no effect on the outcome of the case. *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008).

However, in *Willcockson*, the court was faced with circumstances where it could not "determine from the record whether the ALJ overlooked [lay witness] statements, gave them some weight, or completely disregarded them." *Id*. at 880. The court stated that "though the ALJ is of course not required to accept all lay testimony, we think it is almost certainly error to simply ignore it altogether." *Id*. at 881. The court cited the ALJ's failure to mention the lay witness testimony in his decision as one of multiple reasons supporting its decision to remand. *Id*. at 880. The Court cautioned that individually, the errors might not warrant remand, but in combination, the errors created "sufficient doubt about the ALJ's rationale for denying [the claimant's] claims[.]" *Id*.

More recently, in *Buckner v. Asture*, the Eighth Circuit relaxed the *Robinson* approach, *see supra*, and held that it was not reversible error for the ALJ to fail to mention lay witness evidence

where the same evidence that the ALJ referred to in discrediting the claimant's testimony also discredited the lay witness evidence *and* the ALJ's decision did not suffer from "other deficiencies," such as was the case in *Willcockson*. *Buckner*, 646 F.3d 549, 560 (8th Cir. 2011). This is in contrast to the *Robinson* approach in that under *Robinson*, the ALJ was required to at least make an explicit finding discrediting the lay witness evidence before the same evidence that discredited the claimant's testimony could be said to discredit the lay witness evidence. Under *Buckner*, the ALJ's decision may be upheld even though the decision makes no reference to lay witness evidence as long as the decision is not otherwise deficient.

Here, similar to *Willcockson* and *Buckner*, the ALJ makes no absolutely no mention of the evidence provided by the lay witness. Under *Buckner*, if the decision does not suffer from any other deficiency, the Court could find that the evidence presented by Hinson is discredited by the same evidence that discredits Plaintiff's claims. *Robinson*, 956 F.2d at 841. However, as discussed above, the ALJ's decision is deficient in that the ALJ's decision that other work exists in significant numbers in the national economy that Plaintiff can perform is not supported by substantial evidence. Therefore, "the ALJ's failure to refer to the [lay witness evidence] is another reason supporting [the] decision to remand." *Willcockson*, 540 F.3d at 881.

It is recommended, the Court direct the ALJ to consider the third party function report provided by Terry Hinson and that the ALJ make an express credibility determination regarding Hinson and explain the reasons for his credibility determination.

## VI.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that this case be reversed and remanded for further proceedings, because the Commissioner's final determination as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in this Complaint and Brief in Support of Complaint be **GRANTED in part**, and **DENIED, in part**. [Doc. 1]; [Doc. 14]

**IT FURTHER RECOMMENDED** that the Plaintiff's request that this matter be reversed and remanded for reconsideration be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Plaintiff's request that the Court find Plaintiff is entitled to benefits and costs and the Commissioner to pay such benefits and costs be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Judgment of Reversal and Remand be issued pursuant to 42 U.S.C. 405(g), sentence 4 remanding this case to the Commissioner of Social Security for further consideration consistent with this Report and Recommendation.

**IT IS FURTHER RECOMMENDED** that the Court order the ALJ, on remand, to obtain clarification from the vocational expert as to the number of masker, semiconductor positions are available to an individual of Plaintiff's age, education, work experience, and RFC; and then determine whether the number of jobs available to Plaintiff constitutes a significant number.

**IT IS FURTHER RECOMMENDED** that the Court direct the ALJ, on remand, to consider the third-party function report provided by Terry Hinson and that the ALJ make an express credibility determination regarding Mr. Hinson and explain the reasons for the credibility determination.

The parties are advised that pursuant to 28 U.S.C. § 636(b)(1) they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for

good cause is obtained, and that a failure to file timely objections may result in waiver of the right to appeal questions of fact.

Dated this <u>14th</u> day of February, 2012.


    <u>/s/ Nannette A. Baker</u>
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE